**Ms. Bobby Haston ROSEBORO,**
**Plaintiff,**

v.

**FAYETTEVILLE CITY BOARD OF**
**EDUCATION et al., Defendants.**

No. CIV–4–77–27.

United States District Court,
E. D. Tennessee,
Winchester Division.

August 16, 1977.

Avon N. Williams, Jr. and Maurice E. Franklin, Nashville, Tenn., for plaintiff.

Robert W. Stevens and Thomas O. Bagley, Fayetteville, Tenn., and H. Francis Stewart, Nashville, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The application of the plaintiff for a temporary restraining order was denied. See memorandum opinion and order herein of July 21, 1977. A hearing on her application for a preliminary injunction was conducted by the Court on July 29, 1977, at which all parties were present after due notice in person or through counsel. Rule 65(a)(1), (2), Federal Rules of Civil Procedure.

The plaintiff Ms. Bobby Haston Roseboro seeks a mandatory injunction to prevent the (non-teacher) defendants from consummating her transfer from her most recent position as a home economics teacher in a classroom to a position teaching first- and second-grade students and their parents. Ms. Roseboro is a black person; she was succeeded in her most recent position by a white person. She claims that the difference in races was the motivating factor in her transfer.

The Court, in its discretion, limited the parties on the preliminary hearing to less than a full-scale trial, see 42 Am.Jur. (2d) 1081, Injunctions, § 285, and has not yet made a specific finding as to whether Ms. Roseboro's transfer was motivated racially. In so doing, however, the Court was mindful that it would be an unlawful employment practice under the provisions of 42 U.S.C. § 2000e–2 for the defendants purposefully to have treated a Negro less favorably than a white person. *Teamsters v. Union States* (1977), 431 U.S. 324, 335, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396, 415[1a], cited and quoted from in *Hazelwood School District v. United States* (1977), 433 U.S. 299, 307, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768, 776, n. 12.

The defendant board of education is *now* an "employer" within the contemplation of the provisions of 42 U.S.C. § 2000e–2. *Hazelwood School District v. United States, supra*, 433 U.S. at 309–310, 97 S.Ct. at 2742–2743, 53 L.Ed.2d at 778. " * * * Racial discrimination by public employers was not made illegal under Title VII [of the Civil Rights Act of 1964] until March 24, 1972. A

public employer who from that date made all its employment decisions in a wholly nondiscriminatory way would not violate Title VII even if it has formerly maintained an all-white work force by purposefully excluding Negroes.[15]

> "[15] This is not to say that evidence of pre-Act discrimination can never have any probative force. Proof that an employer engaged in racial discrimination prior to the effective date of Title VII might in some circumstances support the inference that such discrimination continued, particularly where relevant aspects of the decisionmaking process had undergone little change. * * * And, of course, a public employer even before the extension of Title VII in 1972 was subject to the command of the Fourteenth Amendment not to engage in purposeful racial discrimination."

*Idem.*

The primary thrust of Ms. Roseboro's complaint is that the entire public education system in Fayetteville and Lincoln County, Tennessee was operated formerly in an unlawful discriminatory manner and that, after token actions eliminating some vestiges of discrimination in assigning its teachers, the defendant board of education reverted to its earlier practice of disparate racial discrimination; in fact, that there has been little change in those practices, to the extent that the Fayetteville public school authorities have been seeking since by many means to eliminate the plaintiff from their teaching staff.

The Court has in abeyance a determination of whether this is to be maintained as a class action. If the plaintiff (and, in that event, the class she will represent) establishes work-force disparities, the defendants must be given a greater opportunity to show that the claimed discrimination pattern is a product of pre-Title VII hiring rather than unlawful post-Title VII discrimination. *Ibid.*, 433 U.S. at 310, 97 S.Ct. at 2743, 53 L.Ed.2d at 779.

The plaintiff contended that, if the Court fails now to enjoin the non-teacher defendants that she will be injured irreparably. She testified on the hearing to her belief that patrons of the school system, with which she will be working after her transfer, " * * * might not work with me * * * " and " * * * would look-down

upon * * * " her. She foresaw as an attendant result that she " * * * wouldn't do a good job * * * " and, as a result, would be subject to dismissal for cause.

There is little, if any, other evidentiary support herein for these fears and direful forebodings on the part of Ms. Roseboro. She was the very first black teacher assigned to a previously all-white school in the school system of Fayetteville, Tennessee. She has occupied this distinct status for some 11 years.

She, herself, testified that the defendant superintendent of the school system responded to an inquiry from a delegation of black parents, as to the reason she had not been charged with mismanagement of her classrooms, that she had been allowed to " * * * hang-on, maybe because she's black. * * * " This official, himself, testified afterward that he had not preferred charges against Ms. Roseboro " * * * because we want to keep blacks. * * * " He added that it is " * * * the better teachers * * * " who are transferred from classroom assignments to positions similar to that to which Ms. Roseboro has been transferred, and that it has been his observation (both as her principal * and her superintendent) that Ms. Roseboro " * * * works better in small groups. * * * "

Seven witnesses also testified (by stipulation or otherwise) that Ms. Roseboro is a " * * * splendid * * * " teacher who has taught her students " * * * excellently * * * " and is " * * * respected * * * " by them. Ms. Elmer Beasley was transferred from teaching remedial reading to teaching a 6th-grade class and testified that she accepted that transfer " * * * reluctantly. * * * "

Such an array of testimony from this host of witnesses suggests to the Court that Ms. Roseboro's belief that she will encounter resistance from uncooperative students and parents, or that she will not be respected in her new position, is, most favorable to her conclusion, doubtful of fruition. These are the stated bases of her claims of irreparable injury.

█ " * * * An injunction will not be awarded in doubtful cases * * * " and " * * * will be refused until the Court is satisfied that a right is about to be destroyed, or irreparably injured, or unless great and lasting injury is about to be done by an illegal act. * * * " *Detroit News. Pub. Ass'n v. Detroit Typo. Un. No. 18, Etc.,* C.A. 6th (1972), 471 F.2d 872, 876[5], [7], certiorari denied (1973), 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687, quoting from the famous statement of Mr. Justice Baldwin in *Bonaparte v. Camden,* C.C.D.N.J. (1830), 3 Fed.Cas. 821, 827 (no. 1617); see 11 Wright & Miller, Federal Practice and Procedure: Civil 369, § 2942. The power to grant injunctive relief should never be exercised merely to assuage fears of what may happen in the future. *Continental Baking Co. v. Woodring* (1932), 286 U.S. 352, 369, 52 S.Ct. 595, 76 L.Ed. 1152, 1165 (headnote 11). A federal court will not grant equitable relief when the plaintiff has an adequate remedy at law. *O'Shea v. Littleton* (1974), 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674, 685[9, 10]; *Beacon Theatres, Inc. v. Westover* (1959), 359 U.S. 500, 506–507, 79 S.Ct. 948, 954, 3 L.Ed.2d 988, 995 (headnote 8). As pointed-out earlier by this Court, Ms. Roseboro sues the defendants for substantial monetary damages, and there is no present reason for the Court to believe that she cannot be made whole in her action at law if she is mistreated illegally by the defendants.

█ Lastly, and not less important, preliminary mandatory injunctions, issued before a final hearing on the merits, are " * * * not regarded with judicial favor

---

* This witness, the defendant Mr. Donald McAlister, as principal of the school in which Ms. Roseboro taught at the pertinent time, recommended that she not be employed for a fourth year and, therefore, acquire teacher-tenure. His recommendation was disregarded by the pertinent board of education, however, and she was reemployed and acquired tenure. The Court considered the possibility of bias toward the plaintiff on the part of this witness in weighing his testimony.

* * * " and [are] " * * * used only with caution and in cases of great necessity. * * * " *Singleton v. Anson County Board of Education*, D.C.N.C. (1968), 283 F.Supp. 895, 899[3]. "Great necessity" therefor has not been demonstrated here. In addition, the defendants claim to be discharging their official duties in good faith. As the late Mr. Justice Cardozo admonished us:

> * * * Caution and reluctance there must be in special measure where relief, if granted, is an interference by the process of injunction with the activities of state officers discharging in good faith their supposed official duties. In such circumstances * * * an injunction ought not to issue "unless in a case reasonably free from doubt." * * * The rule has been characterized as an "important" one, to be "very strictly observed." * * *

*Hawks v. Hamill* (1933), 288 U.S. 52, 60, 53 S.Ct. 240, 77 L.Ed. 610, 618 (headnote 9).

For all which reasons, the application of the plaintiff Ms. Bobby Haston Roseboro for a preliminary mandatory injunction hereby is

DENIED.